**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| **SAGE OHLENSEHLEN, CHRISTINA KAUFMAN, ALEXA PUCCINI, KELSEY DRAKE, MIRANDA VERMEER and ABBIE LYMAN,**<br><br>    **Plaintiffs,**<br>**v.**<br>**UNIVERSITY OF IOWA, BRUCE HARRELD, in his official capacity as President of the University of Iowa, and GARY BARTA, in his official capacity as Director of the Department of Athletics at the University of Iowa,**<br><br>    **Defendants.** | **CASE NO. 3:20-CV-00080-SMR-SBJ**<br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

**COME NOW** Defendants the University of Iowa, Bruce Harreld in his official capacity for the University of Iowa, and Gary Barta in his official capacity for the University of Iowa (referred to collectively herein as "Defendant" or "UI"), by and through its undersigned counsel and submit this Brief in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss").

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 2

II.  STATEMENT OF FACTS ............................................................................................. 4

III. MOTION TO DISMISS STANDARD OF REVIEW ....................................................... 6

IV.  ARGUMENT AND CITATION TO AUTHORITY .......................................................... 8

   A.   Legal Foundation: Title IX ...................................................................................9

   B.   Plaintiffs fail to allege facts that would plausibly support that UI violated Title IX's equitable <u>treatment</u> and equitable <u>financial assistance</u> provisions, thus failing *Iqbal / Twombly*...............................................................................................................9

C.    Plaintiffs fail to allege facts that would plausibly support that Iowa violated Title IX's equitable <u>participation</u> provisions, thus failing *Iqbal/Twombly*. ...................12

  1.    Prong One ............................................................................................... 16

  2.    Prong Two................................................................................................. 19

  3.    Prong Three.............................................................................................. 19

D.    Plaintiffs' Complaint must be dismissed because it seeks nothing but prospective damages for a speculative, future injury that is not legally cognizable. ................21

E.    Plaintiffs' claims for declaratory and injunctive relief must be dismissed as a matter of law. ...................................................................................................................24

V.    CONCLUSION........................................................................................................... 25

## I.    INTRODUCTION

Faced with unprecedented financial exigency as a result of the COVID-19 pandemic, the University of Iowa was forced to make a series of painful reductions in 2020 to secure its financial future. The athletics department implemented department-wide salary cuts in July 2020, reduced or did not fill 40 positions within the department, decreased operating budgets, and instituted a second round of compensation reductions to attempt to mitigate the serious economic impact of the pandemic. However, even with these cost-saving measures, the athletics department projected lost revenue of approximately $100 million and an overall deficit of between $60-$75 million.[1]

---

[1] *See* August 21, 2020 announcement, relied on by Plaintiffs at Doc. 9 ¶ 98 (Amended Complaint), regarding UI's decision to discontinue sports after the conclusion of the 2020-2021 academic year at Bruce Harreld and Gary Barta, *Open Letter to the University of Iowa and Hawkeye Athletics Community*, August 21, 2020, *available at* https://hawkeyesports.com/news/2020/08/21/open-letter-to-the-university-of-iowa-and-hawkeye-athletics-community/ (last accessed December 15, 2020). *See Yellen v. Hake*, 437 F. Supp. 2d 941 (S.D. Iowa 2006) (the court may consider relevant press releases which were cited in the complaint in deciding a motion to dismiss, noting that the information was publicly available at the time of the events at issue); *Jenisio v. Ozark Airlines, Inc. Retirement Plan*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) ("A district court may consider documents on a motion to dismiss where, as here, the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

As a direct consequence of the pandemic and resulting budgetary pressures, in August of 2020, UI made the difficult decision to discontinue its women's NCAA swimming and diving program—along with three men's teams—"to take effect in academic year 2021-2022." (Doc. 9 (First Amended Complaint or "Complaint"), ¶ 96; *see also* ¶¶ 97-98, 100). Each affected student-athlete would remain eligible and able to compete as a member of their team through the Spring 2021 semester.[2] Further, each affected student-athlete would retain their athletic scholarship and certain other athletics benefits through their graduation. (*See* August 21, 2020 announcement, *supra* note 1). UI's decision took into account many factors, including gender equity and the impact that the decision would have on UI's Title IX athletics compliance. UI's decision was implemented diligently to ensure UI would comply with Title IX's equitable athletic opportunity provisions even with the teams' discontinuation. (*Id.*).

On September 25, 2020, current members of UI's women's swimming team filed suit, alleging that UI violated Title IX by announcing that UI would be discontinuing the team after the Spring 2021 semester. Plaintiffs' First Amended Complaint, filed October 15, 2020 ("First Amended Complaint" or "Complaint"), adds claims from two individual students who purport to have an interest in future UI NCAA teams in women's rugby and women's wrestling. (Doc. 9, ¶ 6). Although Plaintiffs included almost 20 pages of historical background in their Amended

---

[2] *See, e.g.*, *Black Team Sweeps 200-Free Relay to Win Intrasquad Meet,* October 24, 2020, *available at* https://hawkeyesports.com/news/2020/10/24/black-team-sweeps-200-free-relay-to-win-intrasquad-meet/ (describing two of the four IU swimmer-Plaintiffs' success in that day's UI swimming competition, which took place well after this lawsuit was filed: "With the score tied at 101 heading into the final event of the meet, the women's relay consisting of Kelsey Drake [and three UI teammates] posted a winning time of 1:33.66. … The Gold team started the meet off with a sweep when … Alexa Puccini [and three UI teammates] touched first in the 200-medley relay in 1:43.54."). While the swimming team's full Spring 2021 schedule has not yet been published, UI intends to have the most fulsome season possible in light of the realities of the COVD-19 pandemic.

Complaint, their *claims* only relate to the present: "the issues that are the crux of this lawsuit involv[e] the recent decision by the UI to terminate the women's swimming and diving program." (Doc. 9, ¶ 86, n.6).

Plaintiffs' Complaint must be dismissed because it fails to allege a cognizable claim or cause of action against UI. For all its length, the Complaint is devoid of factual allegations that UI does not currently comply with Title IX, or that it will not comply with Title IX when the women's swimming and diving team (along with three men's teams) is discontinued after the 2020-2021 academic year. Plaintiffs do not—and cannot—plausibly allege any future entitlement to such a team after Spring 2021, nor can they allege entitlement to either a women's wrestling or women's rugby team. Accordingly, the Court should dismiss this lawsuit, just as its fellow Eighth Circuit court recently dismissed similar claims under parallel facts in *Berndsen v. N.D. Univ. Sys.*, 395 F. Supp. 3d 1194, 1199 (D.N.D. 2019). In fact, the University will comply with Title IX's requirements after UI's programmatic changes are implemented.

For the reasons set forth more fully below, dismissal is proper under Federal Rule of Civil Procedure 12(b)(6).

## II.     STATEMENT OF FACTS

In August 2020, UI announced that it would discontinue four varsity athletics teams, including women's swimming. (Doc. 9, ¶¶ 96-97). UI's President Bruce Harreld and Athletics Director Gary Barta explained that the cuts were driven by the COVID-19 pandemic and the University's resulting financial exigency. (*Id.*, ¶ 98).

Shortly after the announcement, Plaintiffs filed the instant lawsuit against UI, claiming that UI violated Title IX by eliminating the women's swimming team and by failing to meet Title IX's equitable participation, equitable treatment, and equitable scholarship requirements. (*Id.*, ¶¶ 130-

138). With respect to Title IX's equitable participation requirement, Plaintiffs make the conclusory assertion that UI "cannot meet any prong of the Three-Part Test." (*Id.*, ¶ 109, 132).

The bulk of Plaintiffs' Amended Complaint concerns outdated allegations that are not germane to Plaintiffs' claims. (*See, e.g., id.* at pages 10-28 (¶¶ 21-90) (allegations from the formation of Iowa as a state in 1846 through the 2018-2019 academic year)). As Plaintiffs note, many of those background allegations were the subject of a comprehensive investigation by the U.S. Department of Education's Office for Civil Rights ("OCR") – the federal agency responsible for Title IX enforcement. (*Id.* at ¶¶ 76-86). However, that investigation terminated with OCR's conclusion that UI complied in full with Title IX. On October 29, 2019, OCR issued its final closure letter, clearly establishing that UI met all terms of its comprehensive Resolution Agreement enacted to "ensure" compliance with Title IX and its implementing regulations:

> On December 29, 2017, the University of Iowa (University) [entered] a Resolution Agreement (Agreement) [with] the U.S. Department of Education, Office for Civil Rights (OCR) … to ensure its compliance with Title IX of the Education Amendments of 1972 (Title IX) …, which prohibits discrimination based upon sex.
>
> OCR previously informed the University it had met the terms of all items in the Agreement, except for Item IX [recruiting].
> …
> OCR has no other information to indicate that the University has failed to provide men and women with equivalent treatment, benefits, and opportunities in recruiting. Therefore, OCR has determined that the University has met the terms of Item IX of the Agreement.
>
> As the University has met the terms of the Agreement in this case, OCR is closing the monitoring of the case as of the date of this letter.

A copy of OCR's October 29, 2019 investigation closure letter is attached hereto as Exhibit B.[3]

---

[3] The OCR closure letter is contemplated within the four corners of the Complaint (*see* ¶ 76 *et seq*.) and is public record as between two public entities. On a motion to dismiss, the Court may consider materials that were not attached to the Complaint that are "integral to the claim" or "contemplated by or expressly mentioned in the complaint," where the authenticity of the materials

On the face of their Complaint, Plaintiffs admit that the relevant time period for *their* claims is limited to the present and future: "[T]he issues that are the crux of this lawsuit involving the *recent* decision by the UI to terminate the women's swimming and diving program, occurred *after* the completion of the OCR's investigation"—*after* October 29, 2019. (Doc. 9, ¶ 86, n.6 (emphasis added), ¶¶ 128-29 (stating that Plaintiffs *will* suffer harm when the swim team is eliminated)). Accordingly, Plaintiffs' lengthy background allegations from prior to the 2019-2020 academic year simply are not probative of their claims.

Despite its length and reliance on historical background information, the Complaint fails to allege facts that would plausibly support the contention that UI has violated Title IX since the 2019-2020 academic year, or that UI will violate Title IX after Spring 2021 when the women's swimming team concludes its final season. This failure under the *Twombly* and *Iqbal* pleading standards compels dismissal of Plaintiff's Complaint in its entirety.

## III.   MOTION TO DISMISS STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides that certain defenses may be presented to the Court by a motion in writing, including failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a Court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the

---

is not questioned. *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013); *see also Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotations omitted). *See also* note 1, *supra*.

pleader from the facts alleged. *Walker v. Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), citing *Twombly*, 550 U.S. at 555. Hence, factual allegations that are "merely consistent" with a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id*. In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]," *Twombly*, 550 U.S. at 556, and the Supreme Court has rejected the notion that discovery must be available to a plaintiff who cannot allege sufficient factual matter to plausibly suggest an entitlement to relief. *Iqbal*, 556 U.S. at 678-79; *see also Zink v. Lombardi*, 783 F.3d 1089, 1105-1106 (8th Cir. 2015) (citing *Twombly*, 550 U.S. at 556-57).

Under the *Twombly / Iqbal* standard for a motion to dismiss, Plaintiffs must factually establish that *they* have a cognizable claim and suffered harm, but the Amended Complaint's assertions of actionable injury are based on history, assumptions, and speculative conclusions, not facts. Plaintiffs' mere assertions that UI's announcement of the elimination of the women's swimming team would violate Title IX are both impermissibly conclusory and untrue. (*See* Doc. 9. ¶¶ 133); *see Berndsen*, 395 F. Supp. 3d at 1197, 1199 (while facts alleged in the complaint are accepted as true, conclusory allegations of the elements of a cause of action are insufficient to state

a plausible claim). Because Plaintiffs' speculative and conclusory statements fail to meet the required pleading standard, dismissal is required.

Moreover, the named Plaintiffs cannot save their complaint by styling it as a class action. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n. 6 (2016); *Lewis v. Casey*, 518 U.S. 343, 357 (1996). "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976), quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Since the class has yet to be certified, the named Plaintiffs must demonstrate standing to bring this action on behalf of themselves and the unnamed class members. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009). As discussed below, the named Plaintiffs cannot assert a cognizable claim and as a result their case must be dismissed.

## IV.    ARGUMENT AND CITATION TO AUTHORITY

Although Plaintiffs nominally raise three counts in their Complaint, Plaintiffs fail to make allegations which plausibly support Counts II and III for alleged inequitable treatment and inequitable financial assistance, thus failing the pleading standards set forth in *Twombly* and *Iqbal*.[4] The focus of the Complaint—Plaintiffs' attempts to establish a violation of Title IX's equitable participation requirement—suffers from the same inadequacy: lack of non-speculative, factual, and relevant allegations. The burden is on Plaintiffs to plausibly allege that UI does not comply with any of the three alternative pathways to compliance with Title IX's equitable participation

---

[4] Plaintiffs also omit any suggestion of inequitable treatment or financial assistance in their motion for a TRO or preliminary injunction. *See* Doc. 12-1 at 14 ("the focus of this request for preliminary relief is Defendants' failure to provide to Plaintiffs equal athletic participation opportunities").

requirement. They have not carried this burden under *Twombly* and *Iqbal*, and their Complaint must be dismissed.

### A.        Legal Foundation: Title IX

Title IX is a 37-word gender equity law that was enacted in 1972 to guarantee equitable opportunities in education programs. 20 U.S.C. § 1681(a). In 1975, Title IX regulations were published to define "equal athletic opportunity for members of both sexes" under 11 factors. *See* 45 C.F.R. § 86.41(c); 45 C.F.R. § 86.37(c) (1975).[5] Generally, those factors are broken into three categories: equitable athletic participation opportunities, equitable athletics-related financial aid, and equitable treatment. *See Gonyo v. Drake Univ.*, 879 F. Supp. 1000, 1003 (S.D. Iowa 1995); (*see also* Doc. 9, Counts I, II, and III). As discussed in greater detail below, Plaintiffs fail to provide factual support for their assertions that UI violated Title IX in any of those areas during the relevant time period.

### B.        Plaintiffs fail to allege facts that would plausibly support that UI violated Title IX's equitable <u>treatment</u> and equitable <u>financial assistance</u> provisions, thus failing *Iqbal / Twombly*.

OCR concluded on October 29, 2019 that UI had met all terms of the University's Agreement "to ensure compliance with Title IX" after OCR's thorough investigation that evaluated UI's compliance on all Title IX athletics factors. (Exhibit B). The Amended Complaint fails to plausibly allege that UI has violated Title IX's terms since then.

In regard to equitable treatment allegations involving these Plaintiffs "after the completion of the OCR's investigation" (Doc. 9, ¶ 86, n.6), the Amended Complaint's 42 pages can only muster unsupported, conclusory statements that fall short of the *Twombly* and *Iqbal* pleading

---

[5] The 1975 regulations implementing Title IX were later recodified under the DOE chapter at 34 C.F.R. Part 106. For example, 45 C.F.R. § 86.41 (1975), cited above, was republished in the education chapter in materially the same form at 34 C.F.R. § 106.41. Both regulations are legally effective today, with the DOE regulations cited more frequently.

standards. (*See, e.g.*, Doc. 9, ¶ 1 ("[Plaintiffs]…bring this class action lawsuit to challenge the UI's failure to provide…equitable treatment of female student athletes"); ¶ 20(c) ("The claims of the named individual student plaintiffs … involve claims of unequal athletics opportunities and treatment"); ¶ 115 ("The University will still be providing male students with…better treatment than its female students, even if it moves forward with the announced cuts to the men's sports programs"); ¶ 135 (concluding blankly that "Defendants' failure to treat female athletes substantially equally with respect to…equipment and supplies, tutoring, locker rooms, practice and competitive facilities, housing and dining, and recruitment violates Title IX's equal treatment requirements")).

The clearly-established principle under *Twombly* and *Iqbal*—mere repetition of fact-less, conclusory statements is insufficient to form a legally-cognizable cause of action—is fatal to Plaintiffs' attempts to levy equitable treatment claims. At most, the Amended Complaint suggests factual support *outside* of the relevant time frame as allegedly affecting *previous* classes of female student-athletes but not Plaintiffs; there are simply no factual and timely assertions of disparate treatment on the basis of gender within Plaintiffs' Amended Complaint. (*See, e.g.,* Doc. 9 at ¶ 69 (noting that "differences in treatment for men and women in the Department of Athletics" were alleged in a 2015 employment lawsuit filed by a former Athletics Department employee), *id*. at ¶ 85 (referencing a now-concluded OCR investigation that began in the 2015-2016 academic year)); *compare Berndsen*, 395 F. Supp. 3d at 1200 (granting motion to dismiss conclusory and unsupported equitable treatment claims under Title IX).

Plaintiffs' attempts to allege disparate allocation of athletics financial aid ("AFA") meet a similar fate. The Complaint contains no factually-supported allegation that UI does not award AFA "in proportion to the number of students of each sex participating in … intercollegiate athletics,"

as required to assert a viable claim under Title IX's implementing regulations. 34 C.F.R. § 106.37(c)(1). First, Plaintiffs make misleading, historical allegations from a publicly-available January 10, 2018 OCR letter to imply that Iowa might not have been in compliance with Title IX's AFA requirements in prior years. (Doc. 9, ¶¶ 82-83). But Plaintiffs omit that, three months later on April 25, 2018, in another publicly-available OCR letter, OCR "determined that the University has met the requirements" of Title IX's AFA requirements.[6] Turning to allegations closer to the relevant time period, Plaintiffs assert only that, "before the decision was made to eliminate [the swimming] programs, the University of Iowa…was not providing men and women with equal athletic scholarship opportunities, placing the institution far out of compliance with Title IX." (Doc. 9, ¶ 117). Not only is this statement impermissibly vague and conclusory, but it is easily dispelled by their own allegation in ¶ 137 that women received 49% of UI's AFA in 2018-2019, which was proportional to the number of students of each sex participating in intercollegiate athletics that year.[7] There is no factual allegation in the Amended Complaint that UI has violated

---

[6] In raising OCR's investigation of UI's AFA compliance, the Complaint at ¶¶ 82-83 clearly contemplates public-record documents related to that investigation, such that the Court may consider them on this Motion to Dismiss. The April 25, 2018 OCR letter is attached hereto as Exhibit A. *See also* note 3, *supra*. The same OCR letter stated that "OCR determined that the University has met the requirements" of Part One of the Three-Part Test, which is used to measure equitable participation opportunities, as discussed *infra*.

[7] Although the scope of this case is limited to alleged injuries these Plaintiffs incurred since the 2019-2020 academic year (Doc. 9, ¶ 86, n.6), making this 2018-2019 data untimely as outside the scope of the Complaint, UI will engage in the analysis for illustrative purposes. UI is not offering this analysis as a factual matter for the Court's consideration on its Motion to Dismiss (although the Court can take judicial notice of this public-record information). Rather, UI offers this discussion to highlight the primacy of the *Iqbal / Twombly* requirement for Plaintiffs to properly allege factual support for their allegations, which they wholly failed to do in their Complaint.

The UI 2018-2019 AFA data Plaintiffs rely on is publicly available through the U.S. Department of Education at https://ope.ed.gov/athletics/#/ ("EADA Report"). (*See* Doc. 9, ¶ 20(a)). That public 2018-2019 data shows that the female proportion of UI students participating in intercollegiate athletics that year was 49.32% (327/663), after 15 identified "male practice players" are removed. See discussion, *infra*, at n.13. That ratio matches Plaintiffs' cited AFA ratio: 49%. (Doc. 9, ¶ 137.)

Title IX's requirement to provide athletic financial assistance as required by 34 C.F.R. § 106.37(c)(1) since the 2019-2020 academic year, and there is no allegation that the University *will* discriminate against one sex or the other in the provision of athletics financial aid in the future after the women's swimming team is eventually discontinued.

Finally, while Plaintiffs allege disparate spending (*e.g.*, Doc. 9, ¶¶ 51-53, 56-59), those allegations do not suggest an actionable violation of law. *See* 34 C.F.R. § 106.41(c) ("Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a recipient operates or sponsors separate teams *will not constitute noncompliance* with this section, but [OCR] may consider the failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex.") (emphasis added). Plaintiffs make no allegation that UI failed to provide necessary funds for teams for one sex, so the disproportionate spending allegations are not indicative of a potential Title IX violation.

The Complaint impermissibly depends on self-serving, conclusory statements for Plaintiffs' equitable treatment and AFA claims, in violation of the *Twombly/Iqbal* pleading standard. Without plausible, factual support to advance their contentions, Plaintiffs failed to sufficiently allege cognizable claims under these Title IX provisions. Accordingly, UI respectfully requests that Claims II and III be dismissed as a matter of law.

### C. Plaintiffs fail to allege facts that would plausibly support that Iowa violated Title IX's equitable <u>participation</u> provisions, thus failing *Iqbal/Twombly*.

This case primarily concerns whether UI currently provides equitable athletic participation opportunities and will provide equitable athletic participation opportunities after the women's

---

Clearly, Plaintiffs' assertion that "the institution['s AFA is] far out of compliance with Title IX" is not only unsupported, but is demonstrably false based on publicly-available information on which Plaintiffs' allegations depend.

swimming team is discontinued after the conclusion of the Spring 2021 semester: "[T]he issues that are the crux of this lawsuit involving the recent decision by the UI to terminate the women's swimming and diving program, occurred after the completion of the OCR's investigation" – after October 29, 2019. (Doc. 9, ¶ 86, n.6). The Amended Complaint fails to allege facts that would plausibly support that UI is in violation of Title IX's equitable participation test, or will be in violation in 2021-2022 once the swimming team is eventually discontinued, thus failing *Iqbal/Twombly*.

Plaintiffs' Complaint should be dismissed because Plaintiffs have not pled a legally-cognizable claim under the proper legal standard to assert a Title IX participation violation. As explained by the Eighth Circuit, the Three-Prong Test (a/k/a Three-*Part* Test) furnishes an institution with three alternative avenues to determine whether it provides equitable participation opportunities to "accommodate effectively the [athletic] interests and abilities of members of both sexes so as to comply with Title IX:

> "(1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or
>
> "(2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or
>
> "(3) Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program."

*Chalenor v. Univ. of N. Dakota*, 291 F.3d 1042, 1045 (8th Cir. 2002) (citations omitted). "If an institution has met *any* part of the three-part test, … the institution is meeting this [equitable athletic participation] requirement." *Id*. at 1046 (emphasis added).

Courts in nearly every circuit have considered cases in which equitable athletic participation opportunities have been at issue and they have universally relied on the Three-Prong Test to determine compliance with this aspect of Title IX.[8] Courts in the Eighth Circuit have also consistently applied the Three-Prong Test as the way to measure provision of equitable athletic opportunities under Title IX. *Chalenor*, 291 F.3d at 1046-47; *Berndsen*, 395 F. Supp. 3d at 1198; *Portz v. St. Cloud State Univ.*, 196 F. Supp. 3d 963, 975 (D. Minn. 2016); *Gonyo v. Drake Univ.*, 879 F. Supp. 1000, 1004 (S.D. Iowa 1995).

OCR has also universally promoted the Three-Prong Test as the way to measure provision of equitable athletic opportunities. In its 1996 Clarification,[9] which specifically addressed equitable athletic participation opportunities under Title IX, OCR provided guidance for institutions seeking to comply with Title IX. According to the 1996 Clarification:

> the three-part test furnishes an institution with three individual avenues to choose from when determining how it will provide individuals of each sex with nondiscriminatory opportunities to participate in intercollegiate athletics. *If an institution has met any part of the three-part test, OCR will determine that the institution is meeting this requirement.*

---

[8] *See, e.g. Cohen v. Brown Univ.*, 101 F.3d 155, 173 (1st Cir. 1996); *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 92-93 (2d Cir. 2012); *Williams v. Sch. Dist. of Bethlehem*, 998 F.2d 168, 171 (3rd Cir. 1993); *Equity in Ath., Inc. v. Dep't of Educ.*, 291 F. App'x. 517, 520 (4th Cir. 2008); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 879 (5th Cir. 2000); *Horner v. Kentucky High Sch. Athletic Assoc.*, 43 F.3d 265, 275 (6th Cir. 1994); *Kelley v. Bd. of Trs.*, 35 F.3d 265, 270 (7th Cir. 1994); *Chalenor v. Univ. of N. Dakota*, 291 F.3d 1042, 1046-47 (8th Cir. 2002); *Neal v. Bd. of Trs. of the California State Univs.*, 198 F.3d 763, 770 (9th Cir. 1999); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir. 1993); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 934-37 (D.C. Cir. 2004).

[9] Department of Education, *Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (Jan. 16,1996),* https://www2.ed.gov/about/offices/list/ocr/docs/clarific.html (last visited Nov. 6, 2020).

*Id*. (emphasis added). The 1996 Clarification emphasized that these three alternative approaches guarantee "institutions flexibility and control over their athletic programs" in regard to their athletic offerings as long as one part of the Three-Prong Test is met. *Id*.

OCR's 2003 Clarification[10] provided further guidance regarding its views on Title IX athletics compliance. Therein, OCR reiterated that the Three-Prong Test should be used to demonstrate compliance with Title IX, that compliance with any one of the three prongs will be sufficient to comply with Title IX's athletic opportunity requirements, and that schools are encouraged to use the approach that best suits their needs. *Id*. With regard to use of the Three-Prong Test (a/k/a the Three-*Prong* Test), the 2003 Clarification stated:

> First, with respect to the three-prong test, which has worked well, OCR encourages schools to take advantage of its flexibility, and to consider which of the three prongs best suits their individual situations. All three prongs have been used successfully by schools to comply with Title IX, and *the test offers three separate ways of assessing whether schools are providing equal opportunities to their male and female students to participate in athletics. … [E]ach of the three prongs of the test is an equally sufficient means of complying with Title IX.*

*Id*. (emphasis added).[11]

Plaintiffs fail to assert a valid claim under the operative Three-Prong Test within the pertinent timeframe. Plaintiffs' failure to allege facts to demonstrate that UI violated all three parts of the Test[12] is dispositive in this case and compels dismissal.

---

[10] Department of Education, *Further Clarification of Intercollegiate Athletics Policy Guidance Regarding Title IX Compliance (July 11, 2003),* https://www2.ed.gov/about/offices/list/ocr/title9guidanceFinal.html (last visited Nov. 6, 2020).

[11] *See also* U.S. Dep't of Educ. Office for Civil Rights, *Dear Colleague Letter*, April 20, 2010, *available at* https://www2.ed.gov/ about/offices/list/ocr/letters/colleague-20100420.pdf (last visited Nov. 6, 2020) (reiterating same).

[12] Plaintiffs retain the burden of proof to plausibly allege violations of all three parts. *Roberts,* 998 F.2d at 831 ("Because a Title IX violation may not be predicated solely on a disparity between the gender composition of an institution's athletic program and the gender composition of its undergraduate enrollment . . . plaintiff must not only show that the institution fails on the first

### 1.      Prong One

Prong One requires that "intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments." *Chalenor*, 291 F.3d at 1045. Here, Plaintiffs did not adequately allege that there is a current disparity in 2020-2021 between the gender ratios of UI's enrolled students and those students participating in its athletics program, or that there will be a disparity in Fall 2021 after women's swimming *and three men's teams* are discontinued after this academic year. The Amended Complaint admits early on that its Prong One allegations for the present time period are speculative: "*Based on information and belief*, the number of athletics opportunities allotted to female students is not substantially proportionate to the number of female students in the University of Iowa's full-time undergraduate student body." (Doc. 9 at ¶ 20(a) (emphasis added)).

While the Complaint discusses UI's Prong One EADA data from the prior 2018-2019 period (*id.*), it quickly veers off into purely speculative territory. Setting aside that Plaintiffs misinterpret UI's 2018-2019 EADA report with baseless theories that UI miscounted its student-athletes (Doc. 9 at ¶ 88; *see also id.* at note 9),[13] Plaintiffs offered only speculative allegations

---

benchmark of substantial proportionality but also that it does not fully and effectively accommodate the interests and abilities of its women athletes. Further, an institution would be hard-pressed to establish the full and effective accommodation of the interests and abilities of its women athletes in the abstract. The ultimate burden must lie with the plaintiffs to show that they have been 'excluded from participation in, [or] denied the benefits of' an athletic program 'on the basis of sex.'"),citing *Cohen*, 991 F.2d at 897); *see also Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1124-25 (M.D. Ala. 1997).

[13] *See Berndsen*, 395 F. Supp. 3d at 1200 (citing *Twombly* and *Iqbal* and dismissing Plaintiffs' complaint: "Without any further facts to support this allegation, the Plaintiffs have failed to assert a right to relief above the speculative level."); (*see also* Doc. 20, at 13).

Plaintiffs, in attempting to characterize the inclusion of male practice players in women's roster calculations as inappropriate and deceitful, ignore that the Equity in Athletics Disclosure Act guidelines not only "allow" such counting, but *require* it. *See* "2019 User's Guide for the Equity in Athletics Disclosure Act Web-Based Data Collection" at p.31, *available at*

regarding UI's Prong One compliance for 2019-2020 or 2020-2021. Statements such as "it has been estimated that UI would need to add" athletic opportunities for women or "women were projected to" be underrepresented by an unnamed source, give little confidence that such allegations could possibly be factually grounded. (Doc. 9 at ¶¶ 91-92);[14] (Doc, 20, at 10-14 (Defendants' Resistance to Plaintiffs' Motion for Preliminary Injunction)).  Plaintiffs' *Twombly / Iqbal* obligations require them to allege more; the Complaint does not provide an adequate basis to show whether reinstating the women's swimming team could plausibly be required under Title IX. (*See also* Doc. 9 at ¶ 4 (conclusory); ¶¶ 78 and 89 (outdated), ¶¶ 91-92, 113, 126 (speculative)).

Moreover, Plaintiffs failed to offer any factual allegation that, after women's swimming *and three men's teams* are discontinued, UI will not comply with Prong One in 2021-2022.[15] That is what Plaintiffs must allege and ultimately prove in order to have the women's swimming team reinstated in 2021-2022, or to have any other women's team added as a result of this litigation.

---

https://surveys.ope.ed.gov/athletics2k20/wwwroot/documents/2019_EADA_Users_Guide.pdf ("Male practice players who are listed on the women's team roster as of the day of the first scheduled contest should be counted as participants on the women's team.").

   *See also* April 25, 2018 OCR letter (*supra*, note 6) in which OCR approved UI's Prong One methodology and calculations in holding that "the University has met the requirements" of Prong One.

[14] Indeed, the former statement and much of Plaintiffs' analysis appears to be based on Plaintiffs' misguided review of UI's 2020-2021 athletics website rosters before the original Complaint was filed on September 25, 2020. (Doc. 1 at ¶ 80; reiterated at Doc. 9 at ¶¶ 91). At that time, though, no official athletics activities were taking place due to the global COVID-19 pandemic. (There were only voluntary workouts by certain student-athletes.) UI's athletics website rosters for 2020-2021 still are not fully updated *today* because most 2020-2021 teams have not yet had their first competition, student-athletes may still choose to opt out or withdraw, and UI's website communications staff has been downsized and furloughed. (*See* Doc. 20-1 at 5, ¶ 23). The website rosters certainly were not updated as of September 25, 2020.

   Plaintiffs' statements like "based on the online rosters for men's and women's teams, the UI will still need to add 81 new athletics opportunities for women" (Doc. 9 at ¶ 113) are meaningless when unaccompanied by any good-faith factual basis.

[15] There is no dispute that UI will be eliminating more men's athletic opportunities than women's opportunities with the pending changes, so any current compliance disparity will be lessened next year.

(*See* Doc. 9 at 41) (Plaintiffs concede that UI is only "prohibit[ed] … from eliminating … women's intercollegiate teams unless … after the elimination, equality of opportunity for women athletes has been achieved."). Plaintiffs' Complaint contains no non-speculative allegation that UI will not achieve statistical balance after the teams are discontinued after their Spring 2021 seasons. Plaintiffs cannot and will not overcome that factual hurdle[16] and, accordingly, Plaintiffs have no viable legal claim.

A fellow Eighth Circuit District Court considered this exact issue involving the University of North Dakota ("UND") last year. In *Berndsen*, 395 F. Supp. 3d 1194, a public university made the decision to eliminate sports teams. Members of the discontinued women's hockey team filed a lawsuit, much like this one, with speculative claims that could not demonstrate a factual basis for asserting that UND would violate Prong One without the plaintiffs' team. In fact, like here, OCR had assessed the university's Prong One methodology and compliance, and affirmed its compliance. As a result, the *Berndsen* Court granted the defendants' motion to dismiss plaintiffs' conclusory and speculative Title IX claims on *Twombly / Iqbal* grounds.

Similarly, Plaintiffs here make no adequately-supported contention that UI did not comply with Prong One during the 2019-2020 academic year, nor do they plausibly allege that UI's program eliminations will not result in compliance with Prong One. *See id.* at 1199 ("An institution's elimination of an athletic program is consistent with both falling out of compliance with Part One (failing to provide substantially proportionate opportunities) and maintaining compliance with Part One (providing substantially proportionate opportunities)"); *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 828-29 (10th Cir. 1993) ("Financially strapped institutions may still comply with Title IX by cutting athletic programs such that men's and

---

[16] UI fully expects to comply with Part One next year. (*See* Doc. 20).

women's athletic participation rates *become* substantially proportionate to their representation in the undergraduate population.") (emphasis added).

The Court should find here, as the *Berndsen* Court did, that Plaintiffs' failure to adequately allege a violation of Prong One of the Three-Prong Test constitutes a failure to state a claim upon which relief may be granted.

### 2.    Prong Two

Alternatively, a school may comply with Prong Two. Again, Plaintiffs failed to allege that UI did not have "a history and continuing practice of program expansion" for female student-athletes. *See Chalenor*, 291 F.3d at 1045. In fact, Plaintiffs lauded UI's history of women's athletics. (*E.g.*, Doc. 9, ¶¶ 31-33.) Plaintiffs' failure to allege that UI is violating Prong Two is fatal because "[i]f an institution has met any part of the three-part test, … the institution is meeting [Title IX's equitable athletic participation] requirement." *Id*. at 1046.

### 3.    Prong Three

Finally, even if Plaintiffs had satisfied the pleading standards to show UI violated Prong One and Prong Two, Plaintiffs still would have needed to allege that UI also violated Prong Three in order to plead that UI violated Title IX's three-part equitable athletic participation requirement. *See Roberts,* 998 F.2d at 831, *supra* note 12. A school complies with Prong Three if "the interests and abilities of the members of [the underrepresented] sex have been fully and effectively accommodated by the present program." *Chalenor,* 291 F.3d at 1045. Under Prong Three, a school is considered in compliance *unless* a sport exists for the underrepresented gender in which there is (a) a reasonable expectation of competition for a new team in that sport, (b) there is "sufficient unmet interest" in the sport, and (c) the interested students have sufficient ability to sustain a team

in that sport.[17] Plaintiffs' Complaint lacks sufficient, factually-supported allegations to suggest that UI does not currently comply with Prong Three, with the exception of two anecdotal expressions of interest in particular sports – women's rugby and wrestling – by one individual Plaintiff each.[18]

First, Plaintiffs do not plead that there is a reasonable expectation of sufficient NCAA competition for new women's rugby or wrestling teams. Publicly-available NCAA data shows that, nationwide, there were zero NCAA Division I women's wrestling programs and only seven women's rugby programs as of 2018-2019.[19] While those numbers may have grown, the Amended Complaint contains no relevant allegation from which the Court could gauge the plausibility of sufficient NCAA competition. Plaintiff Vermeer's "belie[f] that there are enough colleges and universities in traveling proximity to [UI] to allow the scheduling of a full competitive women's rugby season" is conclusory, and wrong. (Doc. 9, ¶ 6(e); *see* Doc. 20 at 23.) Plaintiffs do not even allege sufficient competition for women's wrestling. Thus, the Amended Complaint fails to assert a Prong Three violation.

Then, in regards to the interest and ability components, one individual Plaintiff's anecdotal expression of interest in each sport[20] is not nearly enough to show viability and sufficiency of

---

[17] *See* 1996 OCR Clarification, *supra* note 9.

[18] Of particular importance, women's swimming is not germane to UI's *current* Prong Three analysis because that team is currently offered, and Plaintiffs are currently competing with that team. *See* note 2. Swimming will be germane to UI's *future* Part Three compliance after the team is discontinued, if UI is not otherwise able to comply with the Three-Part Test in the future.

[19] NCAA, *Sports Sponsorship and Participation Rates Report 1981-82 – 2018-19* at p. 201, available at https://ncaaorg.s3.amazonaws.com/research/sportpart/2018-19RES_SportsSponsorshipParticipationRatesReport.pdf (last accessed December 10, 2020).

[20] Excluding impermissibly-speculative allegations related to an "increasingly-vibrant female rugby community" and implied potential interest in NCAA women's rugby opportunities at UI (Doc. 9 at ¶ 6(e)), and an unsupported contention that "increasing numbers of female students" are

interest among UI's female students. Even if each Plaintiff were assumed to have NCAA-level ability in her respective sport, one student-athlete is woefully inadequate to field a competitive rugby or wrestling team.

Plaintiffs have the burden of proof to show sufficient interest and competition in their chosen sport. *See Roberts,* 998 F.2d at 831, *supra* note 12; *see also Beasley v. Alabama State Univ.,* 966 F. Supp. 1117, 1124-25 (M.D. Ala. 1997) ("…courts have concluded[] the burden is better placed on the plaintiff to show interests and abilities that remain unaccommodated by programs currently offered" and noting that an university may be excused "if there is a shortage of available competition within its normal competitive region."). One Plaintiff's opinion per sport is wholly insufficient, and the vague allegations set forth in paragraphs 66, 67 and 127(b) fail the *Iqbal* pleading standard. (*See* Doc. 9, ¶¶ 66, 67, 127(b)). Without adequately alleging UI's current athletics offerings violate Part Three, Plaintiffs have not stated a claim for a Title IX violation under the Three-Prong Test. Accordingly, Plaintiffs' Complaint is insufficient to withstand UI's Motion to Dismiss.

> **D.     Plaintiffs' Complaint must be dismissed because it seeks nothing but prospective damages for a speculative, future injury that is not legally cognizable.**

Further, because UI has not yet eliminated its women's swimming program (*see* note 2), no claim for relief is ripe yet, and Plaintiffs' prospective claim for future damages must be dismissed.

---

interested in women's wrestling (Doc. 9, ¶ 6(f)), the Complaint lacks any allegations that UI's sports offerings do not effectively accommodate its female students' athletics interests and abilities currently. Also, Plaintiff Vermeer is a graduating senior who could not compete on a UI women's rugby team even if one were started in 2021-2022. (Doc. 9, ¶ 6(e)). Her contention that she "could feel interest and support amongst her high school peers, specifically and the community, more generally" is impermissibly speculative. (*Id.*)

Plaintiffs bear the burden of demonstrating standing. *Spokeo, Inc.*, 136 S. Ct. 1540, 1547 (U.S. 2016). To do so, they must demonstrate that they "have suffered an injury in fact," *id.*, and that they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotes omitted). The standing requirement does not change in the context of a class action lawsuit. *Id.* at 1547, n.6. Without standing, a court lacks subject-matter jurisdiction to decide the matter. *Friedman v. Sheldon Community Sch. Dist.*, 995 F.2d 802, 804 (8th Cir. 1993). Plaintiffs have failed to allege that they "have suffered an injury in fact" during the time period prior to the discontinuation of the women's swim team. Multiple Plaintiffs are seniors who, if graduating, can allege no future harm, and if not graduating, have alleged no intent to stay at the University or that they remain eligible to compete. (*See* Doc. 9, ¶ 6(a) (Sage Ohlensehlen is a senior who appears to be a four-year member of the swim team); ¶ 6(d) (Kelsey Drake is a senior who makes no claim that she intends to remain at UI to compete for another year); ¶ 6(e) Miranda Vermeer is a senior who makes no allegation that if she remains at UI she would play rugby on a varsity level if it were offered)).

Moreover, the Complaint fails to allege facts that would plausibly support that UI will violate Title IX's equitable participation requirements after the team is eliminated in 2021-2022. Absent a Title IX violation flowing from that change, Plaintiffs will have no right to a future NCAA swimming team at UI, and thus no cognizable harm. Intercollegiate athletics participation is not a legally-protected right. Multiple courts have recognized that truism in litigation over eliminated teams. *E.g., Gonyo v. Drake Univ.*, 837 F. Supp. 989, 994 (S.D. Iowa 1993) ("Plaintiffs' desire to complete their college education and intercollegiate wrestling at Drake, the school of their choice, is understandable, but Title IX does not establish a right to participate in any particular sport in one's college."); *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615 (6th Cir.

2002) ("There is no constitutional right to participate in intercollegiate athletics."); *Equity in Ath. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011) (there is no "property interest in intercollegiate athletic participation."). In similar cases, Courts have not found harm where, as here, "the students were free to transfer to other colleges offering their chosen sport, which some students had done, so that those athletes were still able to compete at the college level." *Equity in Ath. v. Dep't. of Educ.*, 291 F. App'x 517, 521 (4th Cir. 2008). Additionally, absent a civil rights violation, students have no right to "participate in any *particular* sport in one's college[.]" *Gonyo*, 837 F. Supp. at 994 (emphasis added); *see Mayerova v. Eastern Michigan University*, No. 19-1177 (6th Cir. Mar. 28, 2019) ("[T]itle IX requires equality between men's and women's teams, not that certain teams (say women's softball) be reinstated rather than other sports teams be created, supported, or expanded") (attached for the Court's convenience as Exhibit C); *Roberts*, 998 F.2d at 833 ("an order specifically requiring an institution to maintain a softball team [may go] further than necessary to correct a violation of Title IX"); *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 290 (S.D. Ohio 2006) ("compliance could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing, and bestowing them along with new resources on other women's varsity sports"); *Berndsen*, 395 F. Supp. 3d at 1200 (no right to a women's hockey team when Plaintiffs cannot show that the university will violate Prong One after its discontinuation).

In this light, courts cannot act as "super athletics directors," substituting their preferred teams (or plaintiffs' preferred teams) for the university's preferred teams. *Grandson v. Univ. of Minn.*, 272 F.3d 568, 573 (8th Cir. 2001) (affirming dismissal of Title IX claims and noting that plaintiffs "envision injunctive relief that would have the district court function as a *de facto* super-athletic department director"). This concept was demonstrated in the *Mayerova* case in which the

Sixth Circuit dissolved the district court's injunction and permitted the defendant university to eliminate its softball team. (Exhibit C, pp. 3-4 (Mayerova decision)).  Here, UI retains discretion to select which sports it offers at the intercollegiate level, provided that it offers equitable participation opportunities in the aggregate.

Decisions to remain at or transfer from a school, or to continue to play or retire from a sport, are difficult. But without a legally-protected property right in playing a given sport, Plaintiffs do not face a threat of a legally-cognizable injury as a result of having to make those decisions. Therefore, Plaintiffs' Complaint fails to adequately allege harm arising from the discontinuation of women's swimming at UI; that failure compels dismissal of their claims.

### E.   Plaintiffs' claims for declaratory and injunctive relief must be dismissed as a matter of law.

To the extent that Plaintiffs attempt to state a claim for declaratory and injunctive relief, these claims must also be dismissed as dependent upon an underlying Title IX violation that Plaintiffs did not and cannot sufficiently allege.

To have standing to seek declaratory relief, there must be "a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Marine Equip. Mgmt. Co. v United States*, 4 F.3d 643, 646 (8th Cir. 1993), quoting *Caldwell v. Gurley Refining Co.*, 755 F.2d 645 (8th Cir. 1985). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985), *cert. denied*, 474 U.S. 994, 106 S. Ct. 407, 88 L. Ed. 2d 358 (1985); *see Portz v. St. Cloud State* University, 401 F. Supp. 3d 834, 868 (D. Minn. 2019), *appeal filed Portz v. St. Cloud State University*, No. 19-2921 (8th Cir 2019) (issuing declaratory relief where,

unlike the instant case, the court found that "[t]he facts Plaintiffs allege are not hypothetical but have already occurred."). There is no controversy here in need of judicial intervention, and Plaintiffs are in no position of uncertainty in this case. Instead, Plaintiffs' Complaint is filled with generalized accusations asking this Court to restrict UI's lawful discontinuance of the women's swimming and diving team. For these reasons, any claim by Plaintiffs for declaratory judgment fails.

Similarly, Plaintiffs' claim for permanent injunctive relief fails. A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved." *eBay Inc. v. MercExchange, LLC.,* 547 U.S. 388, 391 (2006). As discussed above, Plaintiffs allege only prospective damages. (Doc. 9, ¶¶ 127(a)-(b), 128-29 (alleging that Plaintiffs *will* suffer irreparable harm if UI is not enjoined)). Plaintiffs make no allegations whatsoever with regard to the third and fourth factor. (*See* Doc. 9). Further, because Plaintiffs' underlying claims fail as a matter of law, injunctive relief cannot be granted. *See Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999).

## V.   CONCLUSION

UI respectfully requests that the Court dismiss Plaintiffs' Complaint as a matter of law because it fails to state a plausible claim for relief. Plaintiffs failed to sufficiently allege that, under the governing Three-Prong Test, the University of Iowa has violated Title IX, or will violate Title IX when it discontinues women's swimming next year. Furthermore, Plaintiffs' factually unsupported, conclusory allegations are not ripe for review and do not meet the *Twombly/Iqbal* pleading standard to show they suffered from any other alleged Title IX violation. Therefore, and

for the reasons described more fully above, UI respectfully requests that Plaintiffs' Complaint be dismissed with prejudice in its entirety.

Respectfully Submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

/s/ *Kayla Burkhiser Reynolds*
KAYLA BURKHISER REYNOLDS
Assistant Attorney General
Department of Justice
Hoover State Office Building, 2nd Floor
1305 E. Walnut Street
Des Moines, IA 50319
Ph:       (515) 725-5390
Fax:      (515) 281-4902
kayla.burkhiser@ag.iowa.gov

/s/ *Ryan Sheahan*
RYAN SHEAHAN
Assistant Attorney General
Department of Justice-Special Litigation
Hoover State Office Building
Des Moines, Iowa 50319
Phone: (515) 281-6658
Fax: (515) 281-4902
ryan.sheahan@ag.iowa.gov

ATTORNEYS FOR DEFENDANTS

| PROOF OF SERVICE | |
|---|---|
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on December 15, 2020: | |
| ☐ U.S. Mail | ☐ FAX |
| ☐ Hand Delivery | ☐ Overnight Courier |
| ☐ Federal Express | ☐ Email |
| ☒ CM/ECF | |
| Signature: /s/*Audra Drish* | |